IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KOLOA MARKETPLACE, LLC, a          )   CIVIL NO.  06-00570 HG-BMK
Delaware Limited Liability         )
Company,                           )
                                   )
                                   )
              Plaintiff,           )
                                   )
        vs.                        )
                                   )
COUNTY OF KAUAI, KAUAI COUNTY      )
PLANNING DEPARTMENT, KAUAI         )
COUNTY PLANNING DIRECTOR, KAUAI    )
COUNTY PLANNING COMMISSION,        )
                                   )
              Defendants.          )
                                   )
_____    )

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION;
AMENDING AND SUPPLEMENTING COURT'S FEBRUARY 20, 2007 ORDER
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND
DENYING PLAINTIFF'S REQUEST FOR ENTRY OF FINAL JUDGMENT**

Plaintiff Koloa Marketplace, LLC is seeking to develop a

retail shopping center complex in the small town of Koloa on the

island of Kauai, Hawaii.  Plaintiff applied to the County

defendants for a development permit.  The County denied the

permit and Plaintiff filed this lawsuit, alleging federal

constitutional and state law claims.  Plaintiff moved for partial

summary judgment on its due process and equitable estoppel

claims.  In support of its motion, Plaintiff argued, in part,

that its permit application was deemed approved by operation of

1

law as a result of the County's failure to act within a statutorily prescribed 60-day time period.

At the February 20, 2007 hearing on Plaintiff's motion for partial summary judgment, the Court orally denied the motion, finding that there existed genuine issues of material fact.  The Court also issued a Minute Order stating its reasons for denial.

Plaintiff, alleging manifest error, moved to reconsider the Court's February 20, 2007 Order denying its motion for partial summary judgment.  The Court DENIES Plaintiff's motion for reconsideration, but AMENDS and SUPPLEMENTS its February 20, 2007 Order because it finds that Plaintiff's motion for partial summary judgment should be denied on grounds in addition to those stated in the Court's February 20, 2007 Minute Order.

The Court denies Plaintiff's motion for partial summary judgment as to its due process claims (Claims 1 and 4 of the Complaint) because Plaintiff has not identified a protected property interest.  The Court denies Plaintiff's motion for partial summary judgment as to Plaintiff's collateral estoppel claim (Claim 7) because collateral estoppel does not apply.  The Court also denies Plaintiff's request for certification pursuant to Fed. R. Civ. P. 54(b) because there is no need to make appellate review immediately available.

<u>**PROCEDURAL HISTORY**</u>

On January 5, 2007, Plaintiff filed a Motion for Partial

2

Summary Judgment (Doc. 13).  Plaintiff sought judgment that
Defendants' denial of Plaintiff's "deemed approved" combined
permit application violated its due process rights pursuant to
the United States Constitution and the Hawaii Constitution.
Plaintiff also sought judgment that issue preclusion barred the
Defendants from relitigating the "deemed approved" provision of
the Kauai County Code.  Finally, the motion contained a request
for Federal Rule of Civil Procedure 54(b) Certification.

On January 18, 2007, Defendants filed an opposition (Doc.
22).

On February 9, 2007, Plaintiff filed a reply (Doc. 27).

On February 20, 2007, the Court held a hearing on the
motion.  On the same date, the Court orally denied Plaintiff's
Motion for Partial Summary Judgment and issued a written Minute
Order stating its reasons for denial (Doc. 30).

On March 6, 2007, Plaintiff filed a Motion for
Reconsideration of the Order Denying its Motion for Partial
Summary Judgment (Doc. 32).

On March 16, 2007, Defendants filed an Opposition to the
Motion for Reconsideration (Doc. 36).

On March 27, 2007, Plaintiff filed a reply to the motion for
reconsideration (Doc. 42).

On April 23, 2007, Plaintiff filed a Supplemental Memorandum
in Support of its Motion for Reconsideration (Doc. 50).

Plaintiff submits that its supplemental memorandum is based on the discovery of new material facts not previously available. Through its supplemental memorandum, Plaintiff attempts to introduce additional facts which it contends the County admitted by virtue of its failure to timely respond to Plaintiff's "Request for Admissions to Defendants". Plaintiff contends that these facts lend additional support to its motion for summary judgment. The material presented in the supplemental memorandum consists of additional facts which Plaintiff contends are no longer in dispute. The additional facts are more appropriately presented in a new motion for summary judgment.

Plaintiff's Supplemental Memorandum in Support of its Motion for Reconsideration (Doc. 50) is **STRICKEN** pursuant to LR 7.4 (setting time frame for the opposition and reply and providing that "[n]o further or supplemental briefing shall be submitted without leave of court").

<u>**STANDARD OF REVIEW**</u>

**A.**   <u>**Motion for Summary Judgment**</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met simply by pointing out to the district court that there is an absence of evidence to support the nonmovant's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment

5

may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). Nor can the opposing party rest on conclusory statements. National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

**B.    Motion for Reconsideration**

Federal Rule of Civil Procedure 60(b) provides for relief from judgments or orders on six separate grounds, including relief due to newly discovered evidence or for any other reason justifying relief from the operation of the judgment. The rule specifically provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by

6

due diligence could not have been discovered in time to move for a new trial under 59(b); (3) fraud . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).  Such relief is within the discretion of the district court and will not be reversed absent abuse of discretion.  Plotkin v. Pac. Tel. & Tel. Co., 688 F.2d 1291, 1292 (9th Cir. 1982).

"A motion for relief from judgment based on a mistake (Rule 60(b)(1)), newly discovered evidence ( Rule 60(b)(2)), or fraud (Rule 60(b)(3)) shall be made 'not more than one year after the judgment, order, or proceeding was entered or taken.'" Nevitt v. United States, 886 F.2d 1187, 1188 (9th Cir. 1989) (quoting Fed R.Civ.P. 60(b)).  A motion based on Rule 60(b)(4) (judgment is void), Rule 60(b)(5) (judgment has been released, satisfied, or discharged, or prior judgment upon which it is based has been reversed or vacated), or Rule 60(b)(6) (any other reason justifying relief from the operation of the judgment) must be made "within a reasonable time".  Fed.R.Civ.P. 60(b).

A successful motion for reconsideration must accomplish two goals.  First, the motion must demonstrate some reason why the court should reconsider its prior decision.  Second, the motion must set forth facts or law that are strongly convincing to

7

induce the court to reverse its prior decision.   See Na Mamo
O'Aha'Ino v. Galiher, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999)
(citations omitted).

**BACKGROUND**

**A.   Applicable Law**

Plaintiff contends that its combined application for Use
Permit, Project Development Use Permit, and Class IV Zoning
Permit ("Application") submitted on September 26, 2005 to the
Kauai County Planning Commission ("Planning Commission") was
"deemed approved" under both Kauai County Code § 8-19.6(e) and
Haw. Rev. Stat. § 91-13.5(c).  An overview of the state and
county land regulatory scheme puts Koloa Marketplace, LLC's
("KM") allegations in context.

**1.   *The Comprehensive Zoning Ordinance for the County of
Kauai***

The Comprehensive Zoning Ordinance for the County of Kauai
("CZO"), Section 8-1.1 *et al*. of the Kauai County Code ("KCC"),
was enacted on August 17, 1972, pursuant to Ordinance No. 164.
The CZO, among other things, regulates the "use of buildings,
structures and land for different purposes", including the
"location, height, bulk and size of buildings and structures, the
size of yards, courts and other open spaces."  KCC, § 8-1.2(b)
and (c).  One purpose of the CZO is "[t]o maintain the concept of
Kauai as 'The Garden Isle', thus assuring that any growth will be
consistent with the unique landscape and environmental character

of the Island."  KCC, § 8-1.2(d).

The CZO divides Kauai according to districts and planning areas.  Different standards for development apply depending on the type of district (*e.g.*, residential, resort, commercial, industrial, agricultural, *etc.*).  Articles 18, 19, and 20 of the CZO govern project development, use permits, and zoning permits, respectively.

> ### a.   *Kauai County Code's automatic permit approval provision*

This case involves Plaintiff's Application to develop a retail shopping center complex known as The Shops at Koloa Town. Article 19 of the Kauai County Code governs zoning permits.[1] Section 8-19.2 provides that zoning permit applications shall,

---

[1]   KM submits that the provisions in Article 19 governing Class IV Zoning Permits, including the "deemed approved" provision at issue in this case, apply to its entire combined project development application and not only to the zoning permit portion of its application.  See KCC, § 8-18.5 ("A project development may only be undertaken in accordance with a Class IV Zoning Permit"); KCC, § 8.20-3 (requiring that use permit and zoning permit applications be filed together); KCC, § 8-20.6 (requiring that with regard to use permits, the "procedures established in Section 8-19.5 for a Class III Zoning Permit shall be followed except:  All use permits for . . . a Project Development, shall require a public hearing in accordance with the procedure specified for Class IV Zoning Permits."). Otherwise, only the zoning permit portion of its Application would be subject to the deemed approved provision.  There is no express deemed approved provision for use permit or project development use permit applications.  The procedures to be followed for combined zoning, use permit and project development use permit applications are less than clear. The Court, however, need not reach this issue in resolving Defendants' Motion for Partial Summary Judgment or for reconsideration.

among other things, be accompanied by:

> (3)   A plot plan of the property, drawn to scale, showing all existing and proposed structures and any other information necessary:
>
>> (A) to show conformity with the standards established in this Chapter, and
>>
>> (B) to a proper determination relative to a specific request.
>
> (4)   Any other plans and information required by the Planning Department.

KCC, § 8-19.2(3) and (4).

Of particular issue is a provision of Article 19, Section 8-19.6 pertaining to Class IV Zoning Permits.  With regard to applications for Class IV Zoning Permits, Section 8-19.6(b) provides:

> (b) The Planning Director or his designee shall check the application to determine whether the construction, development, activity, use or plot plan conforms to the standards established by this Chapter and
>
>> (1) shall refer the application to the Department of Public Works and the Department of Water and may refer the application to any other County or State Department for comment or approval and
>>
>> (2) may require additional information if necessary to make a determination.

KCC, § 8-19.6(b).

Section 8-19.6 establishes two separate 60-day deadlines pertaining to the review and processing of applications.  The first deadline relates to the Planning Director's initial review of, and report regarding, a completed application:

10

(c) Within sixty (60) days after the filing of a completed application, the Planning Director shall prepare a report that indicates the reasons supporting the issuance, issuance with conditions, or denial of the application. The report shall be sent to the applicant, to the Planning Commission, to any persons who have duly requested the report, and shall be made public.

The second 60-day deadline establishes a time frame for at least one public hearing on the application and for the Planning Commission to decide whether to issue the permit, with or without the conditions, or to deny the permit:

(d) Within sixty (60) days after the receipt of the Planning Director's report or within such longer period as may be agreed to by the applicant, the Planning Commission shall hold at least one public hearing on the application and issue the permit with or without conditions or deny the permit. Notice of the proposed public hearing shall be given to the applicant and shall also be published at least once in a newspaper of general circulation in the County, at least twenty (20) days prior to the date of the hearing.

To ensure compliance with the 60 day deadlines, Section 8-19.6(e) contains an automatic permit approval provision:

(e) If the Planning Director or the Planning Commission fails to take action within the time limits prescribed in this Article, unless the applicant assents to a delay, the application shall be deemed approved.

The "deemed approved" provision applies to the 60-day deadline set forth in both subsections (c) and (d).

### 2.  *Hawaii's automatic permit approval law*

The state of Hawaii also has a law providing for automatic permit approval.  Concerns about the economic effects of delayed permit processing led the Hawaii legislature, upon the

11

recommendation of Hawaii's "Economic Revitalization Task Force", to pass an automatic permit approval law, Act 164, Session Laws of Hawaii 1998, codified at Haw. Rev. Stat. § 91-13.5.

Section 91-13.5(c) requires agencies to "adopt rules that specify a maximum time period to grant or deny a business or development-related permit, license, or approval; provided that the application is not subject to state administered permit programs delegated, authorized, or approved under federal law." Pursuant to Section 91-13.5(c), permit issuing agencies, such as the County of Kauai Planning Department, are required to "take action to grant or deny any application for a business or development-related permit . . . within the established maximum period of time . . . ." Otherwise, Section 91-13.5(c) provides that "the application shall be deemed approved." Although enacted first, the 60-day deadline and deemed approved provisions set forth in Section 8-19.6(c), (d), and (e) of the Kauai County Code are the type of provisions contemplated by Hawaii's automatic permit approval law.

## B.   **Undisputed Facts**

While the parties agree on the applicable legal framework, virtually all material facts are in dispute. What is undisputed is that Plaintiff Koloa Marketplace, LLC ("Plaintiff" or "KM") is seeking to develop a retail shopping center complex and professional offices on parcels of land within Koloa Town on the

12

island of Kauai.  KM cannot develop its project without first
obtaining certain permits from Defendants County of Kauai, Kauai
County Planning Department, Kauai County Planning Director, and
Kauai County Planning Commission (collectively, "County" or
"Defendants").  The Defendants, in particular the Planning
Commission, issue project development, use, and zoning permits.

On September 26, 2005, KM filed a combined application for
Use Permit, Project Development Use Permit, and Class IV Zoning
Permit ("Application") with the Kauai County Planning Commission
("Planning Commission") (KM SCSF at 1.).  The County issued a
Staff Report on January 18, 2006.  (KM SCSF at Exh. 1.)  The
first public hearing on the Application was set for January 24,
2006.  (Id.)  On January 24, 2006, the County voted to continue
the public hearing to allow KM the opportunity to provide
additional details and plans.  (County SCSF at 10; Exh. A to
Declaration of Ian K. Costa, Planning Director for County of
Kauai (hereinafter "Costa Decl.").  The Staff Report from the
January 24, 2006 public hearing listed the information requested
by the Planning Commission from KM, noted that comments had not
yet been received from the Department of Public Works Engineering
Division or from the State Department of Transportation Highways
Division, and note that KM would be submitting plans to address
the Planning Commission's concerns.  (Id.)

The County held additional public hearings on April 25, 2006

13

and June 13, 2006.  Staff Reports for both public hearings detail
the Planning Commission's and staff's concerns regarding various
aspects of the project and noted that additional agency comments
would be forthcoming.  (Costa Decl. at Exh. B and C.)  On June 5,
2006, in response to the Planning Commission's concerns, KM
submitted a revised preliminary drainage plan.  (County SCSF at
13 and at Exh. D.)  By letter dated June 8, 2006, KM responded
to the County's concerns regarding the project, including its
concerns as to KM's efforts to meet with the community.  (County
SCSF at 14 and at Exh. E.)  At the conclusion of its June 8, 2006
letter, KM stated:  "We believe that the enclosed material
address all outstanding concerns with respect to the project, and
will allow the hearing to be closed and the application to timely
proceed towards permitting."  (Id.)  KM did not object to any
perceived procedural irregularities in the permitting process.
Nor did KM argue that its Application had been deemed approved.

By letter dated September 19, 2006, KM, for the first time,
informed the County of its position that the Application had been
deemed approved pursuant to Section 8-19.6(e).  (KM SCSF at Exh,
2; County SCSF at 16, citing Costa Decl. at 10).)  The Planning
Director issued his recommendation in September 2006.  (KM SCSF
at Exh. 3.)  The Planning Director concluded that KM's proposed
project could meet the permit requirements if certain conditions
were satisfied.  (Id.)  The Planning Commission nonetheless

14

orally denied the Application on September 26, 2006.  (County
SCSF at Exh. 4.)  The Planning Commission subsequently prepared a
proposed "Findings of Fact, Conclusions of Law, Decision and
Order" denying the combined Application.  (County SCSF at Exh.
5.)  It is unclear from the parties' filings, when the Planning
Commission actually issued its final written "Findings of Fact,
Conclusions of Law, Decision and Order".

**C.   The Court's February 20, 2007 Order**

Plaintiff's Complaint consists of nine claims: Violation of
the Due Process Clauses of the United States and Hawaii
Constitutions (Claim 1); Denial of Equal Protection of the Laws
(Claim 2); Regulatory Taking (Claim 3); Declaratory Judgment
(Claims 4);  Violation of 42 U.S.C. § 1983 (Claim 5); Vested
Rights (Claim 6); Collateral Estoppel (Claim 7); Equitable
Estoppel (Claim 8); and Civil Rights Attorneys' Fees (Claim 9).
Plaintiff moved for partial summary judgment on its procedural
due process claim and corresponding declaratory judgment claim
(Claims 1 and 4), and on its claim that the County is
collaterally estopped from arguing that the deemed approved
provision does not apply (Claim 7).  Plaintiff also asked this
Court to enter judgment pursuant to Fed. R. Civ. P. 54(b).

The Court reviewed all filings related to Plaintiff's motion
for partial summary judgment and, on February 20, 2007, held a
hearing on Plaintiff's motion.  At the hearing, the Court denied

Plaintiff's motion for partial summary judgment.  After the hearing, the Court issued a Minute Order stating its reasons for denial.  The Court found genuine issues of material fact as to: (1) when KM's application was complete as that term is used in Section 8-19.6(e); and (2) whether, if there was a delay in the Planning Director issuing the report required by Section 8-19.6(c), KM assented to such delay.  The Court supplements its oral and written findings regarding material issues of disputed facts with respect to Plaintiff's due process claims, and its oral findings with respect to Plaintiff's collateral estoppel claim, as set forth below.

1.  *There is a Genuine Issue of Material Fact as to When KM's Application Was Complete*

The 60-day clock for the Planning Director to issue the report begins only after the filing of a "completed application". KCC, § 8-19.6.  The purpose of the Planning Director's report is to indicate the reasons for supporting the issuance, an issuance with conditions, or the denial of the application.  As stated in the Court's Minute Order, there are genuine issues of material fact as to when KM's application was complete.  KM claims its Application was complete by December 28, 2005 because the Planning Department scheduled its Application for public hearing. (KM SCSF at 2, 7.)  KM contends that under the permitting process established by the Comprehensive Zoning Ordinance for the County of Kauai ("CZO") permit applications are not scheduled for public

16

hearing until complete.

To the contrary, the County contends that the Application was not complete until the July 31, 2006 deadline passed for the Koloa Community Association to provide comments.  (County SCSF at 7.)  There is evidence in the record to show that comments from the Koloa Community Association were not due until July 31, 2006. (County SCSF at 15 and at Exh. F.)  In the County's view, comments from the Association were part of the additional information the Planning Director considered "necessary to make a determination."  Kauai County Planning Director Ian Costa further avers:  "The County of Kaua'i Planning Commission and Planning Department have always considered an application to be "complete" when all information regarding the proposed project has been received."  (County SCSF at 17; Costa Decl. at 17.)

The County's position is supported by the application procedures set forth in the CZO.  Both Sections 8-19.2 and 8-19.6(b) contemplate the Planning Department requesting additional information as part of the application process.  Section 8-19.2, establishing general application procedures, provides that zoning permit applications shall be accompanied by "[a]ny other plans and information required by the Planning Department."  Section 8-19.6(b) specifically provides that the Planning Director "may require additional information if necessary to make a determination."  Section 8-19.6(b) immediately precedes the

17

section, Section 8-19.6(c), requiring the Planning Director to prepare a report stating his opinion as to how the application should be treated.  There is evidence in the record showing that the Planning Department requested additional information from KM and that KM responded to these requests.  By letter dated June 8, 2006, for instance, KM responded to a number of the County's concerns regarding the project.

Section 8-19.6(b) also provides that the Planning Director "shall refer the application to the Department of Public Works and Department of Water and may refer the application to any other County or State Department for comment or approval."  There is evidence in the record that from the time KM filed its Application in September 2005 through at least April 2006 various agencies submitted comments on the Application.  (County SCSF at Exh. A-C.)  Based on this evidence, a trier of fact could find that the Application was not complete in December 2005 since well after that date the Planning Director was still in the process of gathering information as contemplated by Sections 8-19.2 and 8-19.6.

If the County prevails in its position, the Planning Director's report, issued before the end of September 2006, would be within the 60-day time frame.  In contrast, if KM prevails in its position, the Planning Director's report would have been untimely.  Contrary to KM's contention, there are disputed issues

18

of material fact as to when KM's Application was complete which
cannot be resolved by summary judgment.  The Court cannot find,
as KM asks it to do, that, under Section 8-19.6, its Application
could not have been scheduled for any public hearing at all
unless and until it was complete.  This is particularly true in
light of the Kauai Planning Director's testimony to the contrary.

**2.** ***There Is A Genuine Issue of Material Fact as to
Whether, If There Was a Delay in the Planning Director
Issuing the Report Required by Section 8-19.6(c), KM
Assented to Such Delay***

Section 8-19.6(e) provides that the Application shall be
deemed approved if the Planning Director fails to take action as
required by Section 8-19.6(c) "unless the applicant assents to
the delay."

There is a material issue of fact as to whether KM assented
to the delay such that it can no longer argue that its
Application, and the permits it applied for, were deemed
approved.  KM argues that it did not, as a matter of law and
undisputed fact, expressly or impliedly, assent to the delay.
Yet, it is undisputed that KM did not raise the deemed approved
issue with the County until September 19, 2006, nearly seven
months after it contends its Application was deemed approved.  KM
continued to actively participate in the permit process and
attend the public hearings.  KM continued to provide information
and revise its plans in response to the Planning Department's

19

concerns.  KM was also aware of, and agreed to, continuances of the public hearing.  KM's conduct, from the time it filed its Application through September 2006, may be viewed as inconsistent with the position that its Application had been deemed approved by operation of Section 8-19.6(e).

An exchange between KM's counsel (for purposes of the permit process) and the Chair of the Kauai Planning Commission on June 13, 2006, tends to show that KM was not proceeding under the assumption that its Application had been deemed approved. (County SCSF at Exh. F.).  At the June 2006 hearing, KM's counsel expressed concern as to when the Planning Commission would make a decision on KM's Application.[2]  The fact that KM's counsel was inquiring as to when the Planning Commission would make a *decision* on KM's Application supports the County's position that KM assented to any delay and was proceeding as if its Application had not been deemed approved.

At the June 2006 hearing, KM's counsel also agreed that the

_____

[2]  At the June 13, 2006 hearing Mr. Walton Hong (KM's counsel during the permitting process) stated: ". . . As I understand it, we would be agreeing that the public hearing would be closed, however, we would not object and stipulate to the receipt of any comments or letters from the Koloa Community Association.  One thing that is of concern to me at least is Barbara mentioned that the 60 day clock doesn't start running until you receive the comments which is fine with us except that I'd like them to be able to act in a reasonable fashion.  Not do anything and we never go anywhere with this project.  I don't think that's an unreasonable position to take.  I think they mention possibly meeting in July?"  (County SCSF at Exh. F at 2.)

"60-day clock" would not start running until the Planning Commission received the comments from the Koloa Community Association.  (County SCSF at Exh. F.)  The parties disagree as to which 60-day clock KM's counsel was referring -- whether he was referring to the 60-day clock for issuance of the Planning Director's report, for a final decision on the Application, or for some other action.  This is a disputed issue of material fact.

In sum, KM's conduct gives rise to a material issue of fact as to whether KM assented to a delay in the Planning Director's issuance of his report.  The Court rejects KM's argument that the County had an obligation to inform it that its Application was deemed approved.  The County's position is, and has been, that KM's Application was not deemed approved.  There would be no reason for the County to inform KM otherwise.

   3.   *Issue Preclusion Does Not Bar the County From Re-litigating the "Deemed Approved" Provision*

In its motion for partial summary judgment KM argued that the doctrine of issue preclusion barred the County from re-litigating the deemed approved provision in Section 8-19.6(e) in light of the state court's decision in Cockett v. Planning Commission and Department of the County of Kauai, Civil No. 99-0254, Fifth Circuit Court, State of Hawaii.  (KM SCSF at Grimmer Decl. at Exh. 6.)

Pursuant to Hawaii law, the doctrine of collateral estoppel

bars relitigation of an issue when: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.  Sensible Traffic Alternatives and Res., Ltd. v. Fed. Transit Admin. of U.S. Dep't of Transp., 307 F. Supp. 2d 1149, 1157 (D. Haw. 2004) (citing Dorrance v. Lee, 976 P.2d 904, 910 (Haw. 1999)).

In Cockett, the state court discussed whether an attorney for the County of Kauai had properly advised the Planning Commission that an application would be deemed approved if a majority of four of the seven member commission failed to take action with regard to a Class IV permit and variance permit.  The state court did not reach the issue of whether the permits could be deemed granted because it held that it did not have jurisdiction as to appeals on that issue.

The doctrine of issue preclusion does not apply.  The County's position regarding the deemed approved provision as applied in Crockett is specific to the facts of that case.  The issue in Crockett -- whether the County attorney gave proper advice -- is not the issue in this case.  Moreover, the fact that the County recognized the enforceability of the deemed approved

provision based on the facts of one case has no bearing on the application of the provision to the particular facts of this case.  Plaintiff's motion for summary judgment as to its collateral estoppel claim (Claim 7) is denied.

## ANALYSIS

### A.   Plaintiff's Motion for Reconsideration

Plaintiff premises its Motion for Reconsideration on two allegedly manifest errors:

(1)   the Court's allegedly synonymous use of "completeness" and "acceptance" where those terms carry significantly different meanings under the law; and

(2)   the Court's alleged replacement of legislative intent evidenced by clear statutory language with judicial evaluations of what the law should say.

### 1.   *The Court Did Not Confuse the Terms "Completeness" and "Acceptance"*

The first ground for alleged manifest error has no merit. Plaintiff contends that, instead of considering whether the application was "complete" for purposes of the statutory deemed approved provision, the Court mistakenly looked at whether the application was "accepted".  Plaintiff bases this contention on the Court's oral ruling at the hearing on Plaintiff's Motion for Partial Summary Judgment in which the Court stated:

> I am denying the motion for summary judgment.  Now, there
> is an issue of the waiver, which is a factual issue, and

23

> there is the issue of what is accepted, and what
> constitute[s] "accepted."  And I think we have some
> material issues of fact to be dealt with.

(Motion at 9 (citing Transcript of Hearing on Plaintiff's Motion

for Partial Summary Judgment, dated Feb. 20, 2007, ("Tr.") at

26.))  While the Court mis-spoke and used the word "accepted"

instead of the word "completed" in its oral ruling, the Court's

written Minute Order, dated February 20, 2007, makes clear that

the Court meant to say that there is a genuine issue of material

fact as to when KM's application was *complete*.  The Court is well

aware that Kauai County Code § 8-19.6(c) measures the 60-day time

period for the Planning Director to issue his report from the

filing of a "completed application."

   **2.**   ***The Court's Decision to Deny Plaintiff's Motion for
          Partial Summary Judgment Was Not Based On Impermissible
          "judicial evaluations of what the law should say"***

   As to the second ground for alleged manifest error,

Plaintiff argues that the Court manifestly erred by considering

how the enforcement of the deemed approved provision would

interfere with the County's discretion in reviewing other aspects

of Plaintiff's proposed project.  (Motion at 4.)  Plaintiff

contends that at the hearing:

> the Court appeared to go beyond simply enforcing the
> clear and unambiguous law and ordinance because of
> planning concerns, such as where the post office should
> be located, how the development might impact town
> character, and traffic and engineering considerations. .
> . . The Court also questioned the adequacy of public

participation under the law.

(Motion at 4 (citing Tr. at 3, 6, 11, 15, 17-19, 23-24.)).

Plaintiff contends that these considerations are irrelevant to the Court's interpretation and application of the clear language of the deemed approved provision.  (Motion at 5.)  At the same time, Plaintiff acknowledges that "other permits must be obtained before the project can commence, regardless of whether the application is deemed approved: the County has a web of other approvals designed to ensure that a project cannot be built without due consideration for public health, safety and welfare. Additional statutes and ordinance controlling development, including road engineering, utility design standards, and building codes, further limit the scope of all developments." (Motion at 8; Motion at 10 ("Even if an application is deemed approved due to the Planning Director's failure to issue a report, a developer's deemed-approved status does not render subsequent public hearings unnecessary or irrelevant.").

Contrary to Plaintiff's contention, the Court was not concerned about the enforceability of the deemed approved provision itself, (as the Court is not, for instance, faced with a direct challenge to the constitutionality of that provision); rather, the Court's concerns stemmed from the amorphous nature of Plaintiff's allegedly vested property right which, Plaintiff contends, arose out of its deemed approved Application.

25

This brings the Court to a more careful examination of the allegedly vested property rights upon which KM bases its due process claims.  Upon further review of the parties' filings and the applicable case law, the Court concludes that before considering whether there were material issues of fact, it should have first addressed the issue of whether KM has properly identified a protected property interest.  The Court now considers whether KM has a protected property interest in the deemed approved permits and, accordingly, amends and supplements its order denying plaintiff's motion for partial summary judgment as set forth below.

**B.    Supplemental Order Denying Plaintiff's Motion for Partial Summary Judgment**

In supplementing its order denying Plaintiff's motion for partial summary judgment, the Court holds that Plaintiff has not identified a protected property interest for purposes of its federal constitutional due process claims.  As discussed above, the Court further holds that even if the Plaintiff had identified a protected property interest, there are genuine issues of material fact as to whether the deemed approved provision applies to the facts of this case.  The Court amends and supplements its February 20, 2007 Order denying Plaintiff's motion for partial summary judgment to include the following analysis regarding Plaintiff's allegedly protected property rights.

26

1.   *Assuming Plaintiff's Permits Were Deemed Approved,*
     *Plaintiff Does Not Have a Protected Property Interest*
     *Under the United States Constitution*

The Fifth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, prohibits states from depriving "any person of life, liberty, or property, without due process of law."  It is axiomatic that the due process guarantees of the Fourteenth Amendment apply only when constitutionally protected liberty or property interests are at stake.  See Cassidy v. State of Haw., 915 F.2d 528, 530 (9th Cir. 1990);  Pele Defense Fund v. Puna Geothermal Venture, 881 P.2d 1210, 1214 (Haw. 1994) ("Constitutional due process protections mandate a hearing whenever the claimant seeks to protect a 'property interest,' in other words, a benefit to which the claimant is legitimately entitled.").

Both parties argued the property interest issue in their summary judgment papers.  KM contends that it "acquired a constitutionally protectable property interest when its combined permit application was deemed approved by operation of law." (Motion for Partial Summary Judgment at 8.)  In contrast, the County takes the position that there is no protectable property interest in building or development permits where agency discretion is involved.  (County Opp. at 6.)

"Property interests 'are created and their dimensions are defined by existing rules or understandings that stem from an

27

independent source such as state law . . . .'" Cassidy, 915 F.2d at 530 (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).  "[A] reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir. 1994).  "Since the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise, the question of whether an applicant has a property interest will normally be a matter of law for the court."  RRI Realty Corp. v. Incorporated Village of Southhampton, 870 F.2d 911, 918 (2d Cir. 1989).

Here, KM argues that the deemed approved provision in Section 8-19.6(e) constitutes an "independent source of state law" giving rise to a protected property interest.  In determining whether an applicant has a protected property interest in a permit or license, the key inquiry is whether the agency has discretion to grant or deny the application.  See Erdelyi v. O'Brien, 680 F.2d 61, 63 (9th Cir. 1982) ("Whether the statute creates a property interest in concealed weapons licenses depends 'largely upon the extent to which the statute contains mandatory language that restricts the discretion of the (issuing authority) to deny licenses to applicants who claim to meet the minimum eligibility requirements.'") (citation omitted).  "Where

state law gives the issuing authority broad discretion to grant or deny license applications in a closely regulated field, initial applicants do not have a property right in such licenses protected by the Fourteenth Amendment." Erdelyi, 680 F.2d at 63 (citations omitted).  In Erdelyi, for instance, the Ninth Circuit Court of Appeals held that the applicant did not have a protected property interest in a concealed weapons license because the state statute granted "discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements." Id. at 63.

In the land use context, a landowner has a protected property interest in validly issued permits and approved plats. See Weinberg v. Whatcom County, 241 F.3d 746, 753 (9th Cir. 2001).[3]  A landowner may also have a protected property interest in a subdivision plan or permit application where the landowner has complied with all requirements of the applicable regulations, and the permit issuing authority has no discretion to deny the permit.  See Bateson v. Geisse, 857 F.2d 1300, 1303 (9th Cir. 1988); Southern Co-Operative Development Fund v. Driggers, 696 F.2d 1347, 1352 (11th Cir. 1983) (due process violation where

---

[3]  A landowner generally does not have a protected property interest in a development permit that fails to comply with existing law.  See Hynes v. Pasco County, Florida, 801 F.2d 1269 (11th Cir. 1986) (revocation of building permit that did not comply with county's interpretation of zoning ordinance was not a constitutionally prohibited deprivation of property without due process).

county commission denied subdivision plan application of landowner who complied with all requirements of county's subdivision regulations); Scott v. Greenville County, 716 F.2d 1409, 1418 (4th Cir. 1983) (under South Carolina law landowner had entitlement to issuance of building permit upon presentation of application and plans showing use expressly permitted under then-current zoning ordinance).

The key inquiry in this instance is whether the agency official is *required* to issue the permit once the applicant submits an application that complies with all applicable laws and regulations.  In Bateson, for instance, the Ninth Circuit Court of Appeals upheld the district court's finding of a violation of a building permit applicant's substantive due process rights where the code required the building official to issue the permit once the applicant's building plans complied with the code and other applicable laws, but the city nonetheless refused to issue the permit.  Bateson, 857 F.2d at 1303; see Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000) ("[T]he holder of a land use permit has a property interest if a state law or regulation limits the issuing authority's discretion to restrict or revoke the permit by requiring that the permit issue as a matter of right upon compliance with terms and conditions prescribed by the statute or ordinance."); Alejado v. City & County of Honolulu, 971 P.2d 310, 317 (Haw. Ct. App. 1998)

30

(Plaintiff had protected property interest based on California statute which stated:  'Except as otherwise provided in section 995.2 and 995.4, upon request of an employee ..., a public entity shall provide for the defense of any civil action or proceeding brought against him, in his individual or official capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity.") (quoting Cal. Gov't Code § 995) (citation omitted).  In <u>Bateson</u>, the code did not provide for review by the city council before building permits could be issued.  <u>Bateson</u>, 857 F.2d at 1303.  Yet, the city council voted to withhold the building permit without any due process.  <u>Id</u>.

In contrast, a landowner does not have a protectable property interest in a development permit where the permit scheme is entirely discretionary.  <u>See</u> <u>Wedges/Ledges</u>, 24 F.3d at 62 ("A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms"); <u>Compare</u> <u>Parks v. Watson</u>, 716 F.2d 646, 657 (9th Cir. 1983) ("We believe that the statutory scheme placed significant substantive restrictions on the agency's actions so as to confer due process rights.") <u>with</u> <u>Jacobson v. Hannifin</u>, 627 F.2d 177, 180 (9th Cir. 1980) (since the Gaming Control Act unmistakably committed the substance of licensing decisions to the discretion of the Commission, the

31

procedural guarantees provided for in the Act did not enhance an applicant's expectation of obtaining a license to a degree sufficient to create a protectable interest).  As the United States Supreme Court has emphasized, property interests arise only when the relevant state law provisions "truly ma[k]e [the conferral] of [the benefit] mandatory."  <u>Town of Castle Rock v. Gonzales</u>, 545 U.S. 748, 760 (2005).

     **a.** *Kauai's Comprehensive Zoning Ordinance is Discretionary*

As discussed above, to determine whether a landowner has a protected property interest, the court looks to the state statutory or regulatory scheme which establishes the alleged entitlement.  In this case, the Court must determine whether Kauai's Comprehensive Zoning Ordinance ("CZO") is mandatory or discretionary.[4]  Whether KM has an entitlement to the issuance of a development permit depends on whether the CZO mandates the approval of development applications upon satisfaction of all regulations or whether the County retains discretion to deny the application.

A review of the CZO shows that it is, as a whole, discretionary.  The CZO does not require the Planning Commission or Planning Director to grant project development, use permits, or zoning permits upon satisfaction of certain enumerated

_____

    [4]  The Court discusses the effect of the deemed approved provision in the next section.

criteria.  The CZO uses "may" throughout.  With regard to project developments, for instance, Section 8-18.3 provides: "Any use, structure or development that is permitted in the Use District in which the land of the applicant is located, and any other use, structure or development subordinate or in support of, those uses *may* be allowed if it is demonstrated that . . . ." (emphasis added); see Section 8-18.5 (Permits Required) ("A project development may only be undertaken in accordance with a Class IV Zoning Permit.  The permit *may* be issued by the Planning Commission if it determines that the requirements of this Article have been met . . .") (emphasis added); Section 8-18.6 (Joint Development of Two or More Abutting Lots) ("If the Planning Commission finds that the joint development is reasonable, logical and consistent with the zoning regulations pertinent to the area, it *may* issue the Use permit . . . .  The Planning Commission may impose other conditions relating to the proposed development as may be consistent with the Comprehensive Zoning Ordinance") (emphasis added);  Section 8-20.5(a) (Standards) ("A Use Permit *may* be granted only if the Planning Commission finds that the establishment, maintenance, or operation of the construction, development, activity or use . . . ") (emphasis added); Section 8-20.5(b) ("The Planning Commission *may* impose conditions on the permit involving any of the following matters: location, amount and type . . . and other matters *deemed*

*necessary* by the Planning Commission") (emphasis added).  The CZO not only affords the Planning Commission discretion to require the applicant to submit certain materials and information in support of his application, but also affords it ultimate discretion to grant, grant subject to satisfaction of certain conditions, or deny applications.  <u>See</u> Section 8-19.6(d) (Class IV Zoning Permits) (". . . the Planning Commission shall hold at least one public hearing on the application and issue the permit with or without conditions or deny the permit.")  In sum, the CZO does not create a protectable property interest in development or use permits because, even if all requirements are satisfied, it does not mandate that the Planning Commission issue a permit.

The ordinance at issue in this case is similar to that in <u>Oregon Entertainment Corporation v. City of Beaverton</u>, 2005 WL 839562 (D. Or. April 11, 2005).  In <u>Oregon Entertainment Corporation</u>, the federal district court entered summary judgment in the city's favor on a developer's Section 1983 due process claim.  The Ninth Circuit Court of Appeals affirmed the lower court's decision in an unpublished opinion.  <u>See</u> <u>Oregon Entertainment Corp. v. City of Beaverton</u>, 2007 WL 1297007 (9th Cir. May 3, 2007).  The case involved a developer's application for a conditional use zoning permit under the City of Beaverton Development Code.  The developer argued that the state and local statutes and regulations created a federally protected property

34

interest in a conditional use zoning permit to operate a business on a 24-hour basis.  The district court held that the statutes and regulations at issue did not create a federally protected property interest.  Central to the court's holding, was the fact that the Beaverton Development Code was not "truly mandatory"; rather, it provided guidelines and left the ultimate disposition to the discretion of the decisionmaker.  See, e.g., Beaverton Development Code ("BDC") § 20.10.05.2.B (stating that conditional uses "may be permitted"); § 50.15.C (recognizing that a decision about conditional use permits "require[s] the exercise of substantial discretion").  Like the development code at issue in Oregon Entertainment Corporation, Kauai's CZO is not truly mandatory and leaves the Planning Commission discretion whether to grant or deny the permit.  See Triomphe Investors v. City of Northwood, 835 F.Supp. 1036, 1043 (N.D. Ohio 1993) (discretionary zoning regulation did not vest plaintiffs with a legitimate claim of entitlement that special use permit would issue).

Also significant is the fact that under Hawaii law a developer does not have vested property rights under discretionary land use regulations until there has been a final discretionary action.  In County of Kauai v. Pacific Standard Life Insurance Co., 653 P.2d 766 (Haw. 1982), the Hawaii Supreme Court considered whether a developer had vested property rights, based on an estoppel theory, under the CZO.  The Kauai County

Council had amended the CZO to rezone certain land from
"open/agriculture" to "resort" in order to permit a developer's
large scale hotel and condominium development.  <u>Id</u>. at 770.  The
Committee to Save Nukolii, an unincorporated association of Kauai
County residents, circulated a petition to repeal the resort
zoning ordinance pursuant to the referendum provisions of the
Kauai County Charter.  After filing of the referendum petition,
the Kauai County Planning Commission approved the developer's
application for a Special Management Area (SMA) use permit and
for building permits for hotel and condominium structures.
Subsequently, the electorate approved the referendum to appeal
the resort zoning ordinance.  <u>Id</u>. at 771.  The County of Kauai
then filed a declaratory judgment action to determine the
parties' respective rights after repeal of the resort zoning
ordinance.

     The developer argued that the County of Kauai was equitably
estopped from prohibiting it from completing the development
project.  Although theoretically distinct[5], the concepts of
"equitable estoppel" and "vested rights" as applied in the land
use context typically lead to the same result.  <u>Id</u>.  ("In the

---

     [5]  "'Estoppel focuses on whether it would be inequitable to
allow the government to repudiate its prior conduct; vested
rights upon whether the owner acquired real property rights which
cannot be taken away by government regulation.'"  <u>Pacific
Standard</u>, 653 P.2d at 771 (quoting <u>Allen v. City & County</u>, 571
P.2d 328 (Haw. 1977)).

land use context, the vested rights doctrine was employed
synonymously with the estoppel theory by a majority of courts at
the time the charter amendment was drafted and adopted"); id. at
779 ("Our holding that the County is not equitably estopped from
enforcing the 1980 zoning referendum as applied to the
Developers' project is consistent with constitutional concepts
underlying the vested rights doctrine.  . . . [T]he
constitutional analysis rarely produces a different result even
though it focuses on whether the owner acquired real property
rights which cannot be taken away by government regulation.")
(citation and quotations omitted).

The Pacific Standard court established standards for when
the doctrine of equitable estoppel applies.  The court made clear
that for the doctrine of equitable estoppel to apply, the
developer's reliance must be based on more than existing zoning
laws or a good faith expectancy that the development will be
permitted.  Id.  In addition, there must be "an official
assurance on which [the developer] has a right to rely that his
project has met the zoning requirements, that necessary approvals
will be forthcoming in due course, and that he may safely proceed
with the project." Id.; see Congregation ETZ Chaim v. City of
Los Angeles, 371 F.3d 1122, 1125 (9th Cir. 2004) (citing Toigo v.
Town of Ross, 70 Cal.App.4th 309, 321 (Cal. Ct. App. 1998) ("A
developer's right to develop property pursuant to its proposed

37

plans vests when: (1) a valid building permit issues, and (2) the developer performs substantial work and incurs substantial liabilities in good faith reliance on the permit.") (applying California law).

More specifically, a developer cannot rely solely on the CZO to establish vested property rights in a development permit.  As the Pacific Standard court recognized, the Kauai Planning Commission's actions in accordance with the CZO are discretionary.  Id. ("The county's final *discretionary* action conformed with the intent, purpose, and spirit of the amendments to the overall zoning scheme") (emphasis added); id. at 775 ("it is undisputed that the last *discretionary* permit action by the County was the April 9, 1980 vote of the planning commission authorizing a Special Management (SMA) use permit for the Nukolii development") (emphasis added).  Before a developer may claim a vested property right, it must be able to point to "final discretionary action" constituting a zoning official's *assurances* that the development will be approved.  Id. at 775 ("[F]inal discretionary action constitutes official assurance for zoning estoppel purposes.").  The court reasoned that limiting the application of equitable estoppel to instances in which there has been final discretionary action, "preserves government control over development until the government's own process for making land use decisions leaves nothing to discretion." Id.  In

38

adopting this approach, the court expressly rejected the
position, taken by some states, that a developer has a vested
property right upon the filing of a permit application.  Id. at
774 n. 8.

Applying the final discretionary action standard to the
facts of the case before it, the Pacific Standard court found
that even though the County had approved the SMA permit, the fact
that the referendum had already been filed, prevented its
decision from being a final discretionary action.  Under the
referendum process, the electorate could still exercise its
discretion to approve or deny the resort zoning ordinance.  Id.
at 775.  The existence of this discretion prevented the developer
from having vested rights in the SMA permit or in the building
permits.  Id. at 776.   The lack of irrevocable rights under an
estoppel theory also meant that there was no constitutional
claim.  Id. at 781 ("Since they acquired no irrevocable rights to
construct the resort complex by virtue of the intervening events,
the Developers have no constitutional claim that a taking has
occurred").

In sum, the Pacific Standard case teaches that the CZO is
discretionary and does not, itself, give rise to vested property
rights.  Developers do not have vested property rights under the

CZO until *final* discretionary action granting the permit.[6]  <u>See</u>
<u>Sadri v. Ulmer</u>, 2007 WL 869192, at *7 (D. Haw. 2007) ("The
'official assurance' on which a plaintiff is entitled to rely is
the 'final discretionary action' of the government.")

The CZO is unlike the California code provision at issue in
<u>North Pacifica, LLC v. City of Pacifica</u>, 234 F.Supp.2d 1053 (N.D.
Ca. 2002), cited by Plaintiff.  The code section at issue in that
case imposed mandatory conditions limiting the City's discretion
to deny the permit.  <u>North Pacifica, LLC</u>, 234 F.Supp.2d at 1059
(statute setting forth articulable standards for reviewing
application and *only* conditions upon which application could be
denied, imposed mandatory conditions limiting the City's
discretion, thus creating a protectable property interest).  The
code section required the city to determine whether the proposed
project complied with the general plan and zoning standards.  If
it did, the city could approve or disapprove of the project only
under certain limited conditions.  In contrast, the CZO does not
significantly restrict the Planning Commission's discretion.
Rather, it generally affords the Planning Commission substantial
discretion to grant or deny the application after submission of
all information deemed necessary by the Commission.

This case is also distinguishable from cases such as <u>Foss v.</u>

---

[6]  Final discretionary action would obviously not provide
the developer with a vested property right in the permit unless
the final discretionary action was to *grant* the permit.

National Marine Fisheries Service, 161 F.3d 584 (9th Cir. 1998).
In Foss, the permit at issue was a fishing permit which the
permitting agency had no discretion to deny so long as the
applicant met certain statutory criteria.  The Foss court applied
the entitlement theory and determined that a property interest
existed because "applicants have a protectable property interest
under the Due Process Clause where the regulations establishing
entitlement to the benefit are, as here, mandatory in nature."
Id. at 588.

Under the CZO, the Planning Commission retains discretion to
approve, approve with conditions, or to deny an application,
regardless of whether all laws and regulations have been
satisfied.  A developer cannot claim a vested property right
unless and until the permitting agency has engaged in final
discretionary action granting the permit.

> **b.    *The CZO's Deemed Approved Provision Does Not Give
> Rise to a Protected Property Interest***

The Court next turns to the specific question of whether the
deemed approved provision, in particular the one in Section 8-
19.6(e), alters the discretionary nature of the County's
permitting process under the CZO.  Neither party has cited Ninth
Circuit Court of Appeals cases, federal cases from the district

of Hawaii, or Hawaii state court cases on point.[7]  The Court

turns to cases from other jurisdictions that have addressed the

issue of what effect, if any, an automatic permit approval

provision has on the protected property interest analysis for due

process purposes.  The few decisions directly on point hold that,

where the statutory or regulatory scheme is discretionary, an

automatic permit approval provision does not give rise to a

protected property interest.

In RRI Realty Corp. v. Village of Southhampton, 870 F.2d 911

(2nd Cir. 1989), the Second Circuit Court of Appeals discussed,

at length, whether a developer has a protected property interest

in a building permit deemed approved by operation of law.  In a

well-reasoned opinion, outlining the history of constitutional

challenges to land use regulations, the court held that

application of an automatic permit approval provision that is

part of a discretionary zoning/land use regulation scheme, does

not, as a matter of law, give rise to a protected property

interest.  To determine whether the applicant had a protected

property interest in the permit, the court, as does this Court,

applied the entitlement theory.  Id. at 918.  The entitlement

_____

[7] Although the court in Hawaii Electric Light Co., Inc. v.
Department of Land and Natural Resources, 75 P.3d 160, 173 (Haw.
2003), enforced an automatic permit approval provision under a
Hawaii state land use statute, it did not address whether the
landowner applicant had a constitutionally protected property
interest in the use permit at issue.

42

theory focuses on the degree of official discretion afforded by the applicable code provision.

The court first found that the applicable statutory provision did not create a protected property interest because it conferred wide discretion on the architectural review board in reviewing final design plans. _Id_. at 919. The court next considered the effect of the deemed approved provision. The applicant argued that the architectural review board had forfeited its discretion by not acting on the application within the statutory thirty-day period. _Id_. The court rejected the applicant's argument, reasoning that the applicant's claim to a permit could not, as a matter of constitutional law, be fragmented into two claims, "one subject to the [architectural review board's] discretion within thirty days and one subject to a mandatory duty to issue after thirty days." _Id_. The court recognized that "[i]t may be on that on the thirty-first day, [the applicant] was entitled to a permit, as a matter of state law, as the state court held" but that "[f]or purposes of a property interest under the Due Process Clause, the claim to the permit is indivisible." _Id_. Central to the court's holding was the overall discretionary nature of the statutory scheme: "The [architectural review board's] discretion to deny the permit during the thirty-day interval deprived [the applicant] of a property interest in the permit, regardless of how unlawful under

43

state law the ultimate denial may have been."  <u>Id</u>.

More recently, the Tenth Circuit Court of Appeals, in <u>Norton v. Village of Corrales</u>, 103 F.3d 928 (10th Cir. 1996), followed the court's reasoning in <u>RRI Realty Corporation</u>.  The <u>Norton</u> court likewise considered whether application of an automatic permit approval provision to a developer's permit application created a constitutionally protected property right.  The court rejected the developer's argument that the automatic permit approval provision created a protected property interest by removing the permitting agency's discretion to grant or deny the developer's application.  <u>Id</u>. at 932.  Analogizing the case before it to <u>RRI Realty Corporation</u>, the court reasoned:  "If defendants had the discretion to deny plaintiffs' subdivision application during the thirty-five-day period, plaintiffs' position is not enhanced by defendants' failure to act within that time."  <u>Id</u>.

The Court finds <u>RRI Realty Corporation</u> and <u>Norton</u> persuasive.  The fact that KM's application may be deemed approved, if Section 8-19.6 applies, does not create a constitutionally protected property right.  A single provision meant to streamline the permitting process does not transform an inherently discretionary scheme into a mandatory one.  As KM acknowledges, under the CZO, the County retains substantial discretion over the permit process even where it is undisputed

44

that the deemed approved provision applies.  Even after the
deemed approved provision takes effect, the County retains
discretion as to whether to grant or deny the permit and zoning
application.

This case is distinguishable from cases such as <u>Weinberg v.
Whatcom County</u>, 241 F.3d 746, 753 (2001), in which courts have
recognized a protected property interest in validly approved
permits.  Unlike in those cases, in this case, even if the deemed
approved provision applies, the County could ultimately deny KM
its requested permits if it fails to comply with other code
provisions.  The deemed approved provision does not give KM a
fixed, identifiable right in any particular permit.  There has
still been no final discretionary action by the Planning
Commission.  The Court rejects KM's argument that the deemed
approved provision in Section 8-19.6(e) gives rise to a protected
property interest.

Moreover, even if Plaintiff had identified a protected
property interest based on the deemed approved provision, there
are material issues of fact, as discussed above, as to whether
that provision applies to the facts of this case.

B.    **<u>The Court Declines to Grant Fed. R. Civ. P. 54(b)
      Certification</u>**

Plaintiff's motion for reconsideration renews its request
for Fed. R. Civ. P. 54(b) certification as to the claims
adjudicated by the Court in the Order denying Plaintiff's motion

for partial summary judgment (Claims 1, 4 and 7).  Plaintiff
seeks entry of judgment on the adjudicated claims before final
judgment is entered on all claims.

In its motion for partial summary judgment, Plaintiff
requested Rule 54(b) certification. The request was not in a
separate motion.  The February 20, 2007 order denied, in its
entirety, Plaintiff's motion for partial summary judgment.  The
Court did not rule specifically on the request for Rule 54(b)
certification, as it was contained in the motion for partial
summary judgment.  The Court sets forth its reasons for denying
Rule 54(b) certification in this Order.

**1. *Standard for Granting Fed. R. Civ. P. 54(b) Certification***

In certain circumstances, a court may enter judgment on a
claim before final judgment is entered on all claims.  Federal
Rule of Civil Procedure 54(b) ("Rule 54(b)") provides in
pertinent part:

> When more than one claim for relief is presented in
> an action, whether as a claim, counterclaim, cross-
> claim, or third-party claim, or when multiple
> parties are involved, the court may direct the
> entry of a final judgment as to one or more but
> fewer that all of the claims or parties only upon
> an express determination that there is no just
> reason for delay and upon an express direction for
> the entry of judgment.

In determining whether to grant Rule 54(b) certification,
the court must first decide whether either a separate claim for
relief has been completely resolved in a multiple claim action,

46

or the rights and liabilities of at least one party have been completely resolved in a multiple party action.  See Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7 (1980).

After making the threshold determination, the court must then examine whether there is any just reason for delay.  Wood v. GCC Bend, LLC, 422 F.3d 873, 878 (9th Cir. 2005).  The court exercises its discretion to determine whether the matter is "ready for appeal . . . tak[ing] into account judicial administrative interests as well as the equities involved."  Curtiss-Wright, 446 U.S. 1 at 8; see Wood, 422 F.3d at 878.  The district court acts as a "dispatcher" exercising its discretion to decide which dispositive decision on a claim or counterclaim in a multi-claim action should be "finalized" (i.e., made appealable) and which should be withheld pending resolution of the entire controversy.  Spiegel v. Trustees of Tufts College, 843 F.2d 38, 43 (1st Cir. 1988).

The Ninth Circuit Court of Appeals eschews setting narrow guidelines for district courts to follow in deciding whether to grant Rule 54(b) certification.  Wood, 422 F.3d at 878 n.2.  In Texaco, Inc. v. William R. Ponsoldt, 939 F.2d 794 (9th Cir. 1991), the Ninth Circuit Court of Appeals held that the district courts should take a pragmatic approach to determining whether to certify that focuses on severability and judicial administration: Rule 54(b) certification is proper for the purposes of (1)

47

streamlining litigation by narrowing the issues for trial, and
(2) effectively separating legal from factual questions.  Id. at
797-98; Curtiss-Wright, 446 U.S. at 8 (stating that a court's
discretion under Rule 54(b) is to be exercised in the interests
of sound judicial administration).

The district court may also consider the factors discussed
in Curtiss-Wright including: "whether certification would result
in unnecessary appellate review; whether the claims finally
adjudicated were separate, distinct, and independent of any other
claims; whether review of the adjudicated claims would be mooted
by future developments in the case; whether an appellate court
would have to decide the same issues more than once even if there
were subsequent appeals; and whether delay in payment of the
judgment . . . would inflict severe financial harm." Wood, 422
F.3d at 878 n.2, citing Curtiss-Wright, 446 U.S. at 5-6.

## 2.   Rule 54(b) Certification Is Not Appropriate in This Case

The Court has held that Plaintiff is not entitled to partial
summary judgment on its claims for procedural due process and
issue preclusion.  Plaintiff's adjudicated claims are not
separate, distinct, and independent from those that remain, as
they are all based on the same underlying facts.  As a result,
the appellate court could have to decide the same or similar
issues more than once if there were subsequent appeals.  The
Ninth Circuit Court of Appeals has ruled that where a similarity

48

of legal and factual issues exists between an issue decided by the court and issues still pending in litigation, the district court should be reluctant to certify an order pursuant to Rule 54(b).  Wood, 422 F.3d at 878 n. 2, 879-880; Morrison-Knudsen Co., Inc. v. J.D. Archer, 655 F.2d 962, 965 (9th Cir. 1981).

In Morrison-Knudsen, the Ninth Circuit Court of Appeals ruled that 54(b) judgments should be limited to the "unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of litigants for an early and separate judgment as to some of the claims of the parties."  655 F.2d at 965.  This case does not present this unusual circumstance.

Plaintiff has failed to establish that certification would "streamline the litigation," "narrow the issues for trial," or otherwise promote the "expeditious decision" of this case.  See Texaco, 939 F.2d at 797-98; Executive Risk Indem., Inc. v. Pacific Educ. Services, Inc., 451 F.Supp. 2d 1147, 1165 (D. Haw. 2006) ("Rule 54(b) certification is scrutinized to 'prevent piecemeal appeals in cases which should be reviewed only as single units.'") (quotation omitted).  The court finds that Rule 54(b) certification is not appropriate in this case.

## CONCLUSION

For the foregoing reasons,

(1)   The Court's February 20, 2007 oral order, and written
      Minute Order, denying Plaintiff's motion for partial
      summary judgment is **AMENDED** and **SUPPLEMENTED** as set
      forth herein;

(2)   Plaintiff's Motion for Reconsideration of the February
      20, 2007 Order Denying its Motion for Partial Summary
      Judgment (Doc. 32) is **DENIED**;

(3)   Plaintiff's request for Certification for appeal of the
      Court's order denying partial summary judgment pursuant
      to Federal Rule of Civil Procedure 54(b) is **DENIED**;

(4)   Plaintiff's Supplemental Memorandum in Support of the
      Motion for Reconsideration (Doc. 50) is **STRICKEN**
      pursuant to LR 7.4.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 31, 2007.



/S/ Helen Gillmor
_____
Helen Gillmor
Chief United States District Judge

_____
Koloa Marketplace, LCC v. County of Kauai, et al; Civil No. 06-
00570 HG-BMK; Order Denying Plaintiff's Motion for Reconsideration;
Amending and Supplementing Court's February 20, 2007 Order Denying
Motion for Partial Summary Judgment; and Denying Plaintiff's
Request for Entry of Final Judgment